**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Maureen Mancina, et al.,** | **CASE NO. 1:21-CV-00333** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **Terry McDermott, et al.,** | |
| **Defendants.** | **MEMORANDUM OF OPINION AND ORDER** |

Currently pending is the Motion to Transfer Venue filed by Plaintiffs Maureen Mancina, Carrie Bezek, Julie Rudolf, Charles Rudolf, and Mark McDermott. (Doc. No. 7.) Defendants Terry and Sarah McDermott, individually and as Parents and Natural Guardians on behalf of A.B. and B.C., filed a Response on March 25, 2021, in which they stated that they take no position on Plaintiffs' Motion. (Doc. No. 9.) For the following reasons, Plaintiffs' Motion to Transfer Venue is GRANTED.

**I. Background**

On February 5, 2021, Plaintiffs Maureen Mancina, Carrie Bezek, Julie Rudolf, Charles Rudolf, and Mark McDermott filed a Complaint for Declaratory Judgment in the United States District Court for the Southern District of Ohio, Eastern Division, against Defendants Terry and Sarah McDermott, individually and as Parents and Natural Guardians of A.B. and B.C. (Doc. No. 1.) The Complaint sets forth the following factual allegations.

Plaintiffs Maureen, Carrie, Julie and Mark[1] are siblings and the children of William and Peggy McDermott.[2] (*Id*. at ¶ 11.) William and Peggy's other children are Patrick, Daniel, Brian, David, Eileen, and Kathleen McDermott. (*Id*. at ¶ 13.) When the Plaintiffs were young, the McDermott family lived in Chagrin Falls, Ohio, which is in the Northern District of Ohio. (*Id*. at ¶ 14.) None of the Plaintiffs currently reside in Ohio. (*Id.* at ¶¶ 1-5.)

Plaintiffs allege that, when Patrick McDermott was a teenager, he began sexually molesting his younger siblings, including Eileen, Kathleen, and Plaintiffs Julie and Mark. (*Id.* at ¶ 16.) The molestations were episodic, occurred when the victims were five to six years old, and were known only to Patrick and the victims, none of whom talked about or shared what happened with their parents or each other at the time. (*Id.*) When Patrick left home, the molestation stopped and did not reoccur when he returned from college. (*Id*. at ¶ 17.) Patrick later married Ruth Ann Moroney and fathered three children, including Defendant Terry McDermott. (*Id.* at ¶¶ 17, 18.)

From the mid-1960's to the early 1990s, none of the molested siblings disclosed their experiences with Patrick. (*Id*. at ¶ 19.) Then, in the early 1990's, Julie, Eileen, and Kathleen shared with each other that they had memories of being touched inappropriately by Patrick when they were children. (*Id*. at ¶ 20.) Shortly thereafter, Eileen decided to confront Patrick. (*Id.* at ¶ 21.) She arranged a time to talk to him when he was scheduled to be in Cincinnati, where Eileen lived. (*Id.*) Eileen did confront Patrick, at which time he "admitted what he had done, apologized profusely, and explained that he was lonely and immature as a teenager and the incidents with [his siblings] were

---

[1] When referring to the parties individually, the Court will refer to them by their first names.
[2] Plaintiff Charles Rudolf is the spouse of Julie Rudolf. (*Id.* at ¶ 12.)

2

solely the by-product of his confused adolescence." (*Id.* at ¶ 23.) He promised Eileen that he would apologize to Julie and Kathleen, which he did. (*Id.* at ¶¶ 23, 24.)

From the early 1990's until April 2019, Patrick "appeared to be a model citizen, father, grandfather, brother, and friend." (*Id*. at ¶ 26.) Unbeknownst to any of the Plaintiffs, however, Patrick had been molesting his two granddaughters, A.B. and B.C. (*Id.* at ¶ 29.) A.B. and B.C. are the minor children of Defendants Terry and Sarah McDermott. (*Id.* at ¶ 31.) The original Complaint alleged that Terry and Sarah are residents of Bellville, Ohio, which is in the Northern District of Ohio. (*Id.* at ¶ 6, 7.)

An investigation ensued and Patrick was arrested on May 6, 2019. (*Id.* at ¶ 30.) He admitted to molesting A.B. and B.C. (*Id.*) Terry informed Eileen, who then told him that Patrick had sexually molested her over forty years earlier. (*Id.* at ¶ 32.) According to Plaintiffs, Terry was angry and believed that Eileen should have warned him about Patrick. (*Id.* at ¶ 33.)

The police investigation expanded to include Patrick's criminal sexual abuse of his siblings forty years earlier. (*Id.* at ¶ 36.) Patrick confessed to these crimes as well and provided "detail that excavated the repressed memories of [Plaintiffs] Mark and Carrie." (*Id*.) Carrie now recalled memories that Patrick had sexually molested her. (*Id.* at ¶ 37.) Plaintiff Maureen was never abused by Patrick but was "generally aware" that Patrick had abused Julie, Eileen, and Kathleen. (*Id*. at ¶ 38.) Patrick was convicted and subsequently passed away. (*Id.* at ¶¶ 39, 40.)

In November 2020, Plaintiffs were served with a letter from Terry and Sarah's attorney, which transmitted two complaints alleging (on behalf of A.B. and B.C.) that six McDermott family members and two of their husbands negligently failed to warn Terry and Sarah that Patrick had molested Julie,

Eileen, Kathleen, and Mark forty years earlier. (*Id.* at ¶ 42.) The letter stated that the complaints would be filed shortly. (*Id.* at ¶ 43.)

On February 5, 2021, Plaintiffs filed the instant action in the United States District Court for the Southern District of Ohio, Eastern Division, seeking a Declaratory Judgment that they had no duty, as a matter of law, to control Patrick's conduct, to warn Terry and Sarah, and/or to protect A.B. and B.C. (*Id.* at ¶¶ 47-51.) On February 10, 2021, Magistrate Judge Elizabeth Deavers of the United States District Court for the Southern District of Ohio issued an Order *sua sponte* transferring this case to the instant Court. (Doc. No. 2.) Therein, Magistrate Judge Deavers explained as follows:

> Although the Complaint for Declaratory Judgment states that "a substantial part of the events giving rise to this request for declaratory judgment occurred in this district," none of the allegations support venue in the United States District Court for the Southern District of Ohio, Eastern Division. (ECF No. 1 at PAGEID # 2, ¶ 10.) First, none of the Plaintiffs reside in Ohio, and Defendants allegedly reside in Bellville, Ohio, which is situated in the Northern District of Ohio. (*Id*. at PAGEID # 2, ¶¶ 1-7.) Next, the factual allegations describe events occurring in Chagrin Falls, Ohio and Cincinnati, Ohio. (*Id*. at PAGEID ## 3-4, ¶¶ 14, 21.)
>
> Bellville, Ohio is located in Richland County, Ohio, and Chagrin Falls, Ohio is located in Cuyahoga County, Ohio, both of which fall within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division at Cleveland. *See* 28 U.S.C. § 115(a)(1). Cincinnati, Ohio is located in Hamilton County, Ohio, which falls within the jurisdiction of the United States District Court for the Southern District of Ohio, Western Division at Cincinnati. 28 U.S.C. § 115(b)(1). Venue is in this Court is therefore not proper. 28 U.S.C. § 1391(b)(1), (b)(2) (providing that venue is proper in the judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located, or in the judicial district in which the claims arose).
>
> Accordingly, the Clerk is DIRECTED TO TRANSFER this case to the United States District Court for the Northern District of Ohio, Eastern Division at Cleveland, which serves Richland County and Cuyahoga County, pursuant to 28 U.S.C. § 1406(a) or 1404(a).

(*Id*.) The case was thereafter transferred to the instant Court. (Doc. No. 3.)

On March 18, 2021, Plaintiffs filed an Amended Complaint in which they added several allegations specifically relating to venue. (Doc. No. 6.) Specifically, Plaintiffs allege that Defendants Terry and Sarah McDermott "currently reside[] in Bellville, Ohio, having moved there in July 2020, after all of the conduct described herein occurred and Patrick McDermott died." (*Id.* at ¶¶ 6, 7.) However, Plaintiffs state that, during all relevant times, Terry and Sarah "resided in Franklin County, Ohio and Delaware County, Ohio" with their daughters A.B. and B.C. (*Id.*) Plaintiffs further allege that Patrick resided in Franklin County and that the police investigation was conducted by the Westerville Police Department in Franklin County and the Delaware County Sheriff's Office. (*Id.* at ¶ 31.) The Amended Complaint also alleges that Terry and Sarah filed their lawsuits against Plaintiffs in the Delaware County Court of Common Pleas, and that the complaints in those lawsuits describe sexual molestation that occurred in Gahanna and Westerville in Franklin County, and Lewis Center in Delaware County. (*Id.* at ¶¶ 46, 47.) Both Franklin County and Delaware County are located in the Southern District of Ohio.

Lastly, the Amended Complaint alleges that "[v]enue is proper in this Court, pursuant to 28 U.S.C. § 1391, because none of the events giving rise to this request for declaratory judgment occurred in the Eastern Division of the Northern District of Ohio, but rather occurred in the Eastern Division of the Southern District of Ohio." (*Id.* at ¶ 10.)

Plaintiffs then filed a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), in which they ask this Court to transfer this matter back to the Southern District of Ohio, where it was initially filed. (Doc. No. 7.) On March 25, 2021, Defendants filed a Response, indicating that "they take no position" with respect to Plaintiffs' Motion. (Doc. No. 9.)

5

## II. Legal Standard

28 U.S.C. § 1404(a) permits district courts to transfer civil actions to any other district where the actions may have been brought for the convenience of the parties or witnesses. *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 572 (N.D. Ohio Dec. 7, 1998).

When considering a motion brought under 28 U.S.C. § 1404(a), a district court evaluates factors related to "the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* Additionally, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Id.* (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, (1955)). However, "when the chosen forum is not the plaintiff's residence, this choice is given less consideration." *Cescato v. Anthem, Inc.*, 2005 WL 3487974 at *2 (N.D. Ohio Dec. 21, 2005) (citing *Piper*, 454 U.S. at 242; *Travelers Casualty and Surety Co. v. Philadelphia Reinsurance Corp.*, 2001 WL 631328 at *4 (N.D. Ohio May 10, 2001)).

The party requesting the transfer "bears the burden of proof to show the factors weigh 'strongly' in favor of transfer." *Goodrich Corp. v. Winterthur Int'l Am. Ins. Co.*, 2002 WL 31833646

at *6 (N.D. Ohio June 17, 2002) (quoting *Picker Int'l*, 35 F. Supp. 2d at 573). After weighing the relevant private and public factors, the court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine*, 571 U.S. at 62-63 (quoting 28 U.S.C. § 1404(a)).

**III. Analysis**

In their Motion to Transfer Venue, Plaintiffs argue that this matter should be transferred pursuant to 28 U.S.C. § 1404(a) because all of the events giving rise to their request for declaratory judgment occurred in the Southern District of Ohio, Eastern Division, which comprises thirty counties including Franklin and Delaware Counties. (Doc. No. 7 at p. 4.) Specifically, Plaintiffs assert that transfer is warranted because (1) all of the sexual abuse that forms the basis of Defendants' claims occurred in Defendants' and/or Patrick's homes in Franklin and Delaware Counties; (2) the investigation of Patrick's crimes occurred in Franklin and Delaware Counties; and (3) Patrick was prosecuted, pled guilty, and sentenced in Delaware County. (*Id*.) Plaintiffs further argue that the venue factors under § 1404(a) weigh strongly in favor of transfer because the Southern District of Ohio is a more convenient location for the parties and potential witnesses, and the relevant evidence is located in that District. (*Id*. at p. 6.)

As noted *supra*, Defendants indicate that they "take no position" with respect to whether venue should be transferred. (Doc. No. 9.)

The Court begins by addressing the threshold question under 28 U.S.C. § 1404(a) of whether this case "might have been brought" in the Southern District of Ohio. This requires the court to ask (1) whether the Southern District of Ohio could exercise original jurisdiction over the case; (2) whether that court would have personal jurisdiction over the Defendants; and (3) whether venue

7

would be proper in that court. *See Zimmer Enterprises v. Atlandia*, 478 F.Supp.2d 983, 990 (S.D. Ohio 2007); *Picker Int'l, Inc.*, 35 F. Supp. 2d at 572.

Here, it is not disputed that the Southern District of Ohio could exercise original jurisdiction over the instant case on the basis of diversity jurisdiction. Nor is it disputed that the Southern District of Ohio would have personal jurisdiction over Defendants, both of whom reside in Ohio. With regard to whether venue would be proper in the Southern District, 28 U.S.C. § 1391(b) provides, in relevant part, that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . " 28 U.S.C. § 1391(b). In *sua sponte* transferring this action to the Northern District of Ohio, Magistrate Judge Deavers found that venue was not proper in the Southern District because (1) none of the Plaintiffs reside in Ohio; (2) the Defendants currently reside in the Northern District of Ohio; and (3) "the factual allegations describe events occurring in Chagrin Falls, Ohio and Cincinnati, Ohio." (Doc. No. 2.) As noted above, Chagrin Falls is located in the Northern District of Ohio while Cincinnati is located in the Southern District of Ohio, Western Division.

The Amended Complaint, however, clarifies that a substantial part of the events that form the basis of the instant action occurred in Franklin and Delaware Counties, both of which are located in the Eastern Division of the Southern District of Ohio. Specifically, while not changing the substance of the underlying factual allegations, the Amended Complaint makes clear that Defendants' daughters, A.B. and B.C., were sexually molested by Patrick McDermott in Franklin and Delaware Counties. (Doc. No. 6 at ¶¶ 6, 7, 46.) Moreover, the criminal investigation, prosecution, and sentencing of Patrick McDermott also occurred in Franklin and Delaware Counties. (*Id.* at ¶¶ 31, 40.) Defendants' civil lawsuits against the Plaintiffs were filed in the Delaware County Court of

Common Pleas and, according to Plaintiffs, Defendants assert therein that Plaintiffs' allegedly negligent failure to warn occurred in Franklin and Delaware Counties. (Doc. No. 6 at ¶ 47, 48; Doc. No. 7 at fn 1.) The Court finds these factual allegations sufficient to demonstrate that a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in the Southern District of Ohio, Eastern Division, and, therefore, the instant case might have been brought in that District for purposes of 28 U.S.C. § 1404(a).

Having concluded that venue would be proper in the Southern District of Ohio, the Court next considers several private and public interest factors to determine whether transfer is appropriate. These factors include (1) the convenience of the parties, (2) the convenience of the witnesses, (3) the location of operative facts, (4) the ability to compel unwilling witnesses, (5) the interests of justice, (6) ease of access to sources of proof, and (7) the plaintiff's choice of forum. *See Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016); *Jones v. Ohio National Life Ins. Co.*, 2020 WL 4816233 at * 3 (N.D. Ohio Aug. 19, 2020).

With regard to the convenience of the parties, this factor is neutral. Plaintiffs reside in Kansas, Arizona, Pennsylvania, and Indiana. Thus, all of the Plaintiffs will have to travel to Ohio, regardless of whether this action proceeds in the Northern or Southern District of Ohio. Defendants currently reside in Bellville, Ohio. Although Bellville is located in the Northern District of Ohio, Plaintiffs assert that Defendants, in fact, live 30 miles closer to Columbus (the location of the Courthouse for the Eastern Division of the Southern District of Ohio) than to Cleveland (the location of the Courthouse for the Eastern Division of the Northern District of Ohio). As Defendants are only marginally closer to the Southern District of Ohio, the Court is not persuaded that this factor weighs in favor of transfer. *See Jones*, 2020 WL 4816233 at * 3 (in considering transfer of venue from

Northern to Southern District of Ohio, noting that the convenience of the parties factor was neutral where plaintiffs did not reside in Ohio and requiring Defendants to travel between Cincinnati and Cleveland was "not particularly onerous.")

However, the next two factors -- convenience of the witnesses and the ability to compel unwilling witnesses -- does weigh in favor of transfer.  Plaintiffs assert (and Defendants do not contest) that "Columbus is convenient to all of Defendants' witnesses, who live and can be compelled to attend Court in SDOH/Eastern Division."  (Doc. No. 7 at p. 6.)  Indeed, it appears from the Amended Complaint that at least one potentially key witness, Eileen McDermott, resides in Cincinnati, Ohio, which is located in the Southern District of Ohio. (Doc. No. 6 at ¶ 22.)  For similar reasons, the factor of ease of access to sources of proof tilts in favor of transfer, as evidence relating to Plaintiffs' relationships with Patrick, Terry, Sarah, A.B. and B.C., and the criminal investigation into Patrick's conduct, would likely be located in the Southern District of Ohio.  Notably, Defendants do not contest that each of these three factors (convenience of the witnesses, ability to compel witnesses, and ease of access to sources of proof) weigh in favor of transfer.

The final private interest factor—the plaintiffs' choice of forum—also weighs in Plaintiffs' favor, but only slightly.  While the Plaintiffs chose to file suit in the Southern District of Ohio, this factor does not weigh heavily in favor of transfer in light of the fact that none of the Plaintiffs reside in that District.  Therefore, Plaintiffs do not receive the "substantial deference" enjoyed by plaintiffs who bring actions in their home districts.  *See, e.g., Jones* 2020 WL 4816233 at * 3; *Cescato*, 2005 WL 3487974 at * 2.

However, public interest factors -- the location of operative facts and the interests of justice -- do weigh heavily in favor of transfer.   Interests of justice include "concern for judicial economy,

10

the Court's familiarity with the governing law, the interest in resolving controversies locally, and the relative congestion of the courts." *Bradburn v. Wal-Mart Stores*, 2012 WL 3138373 at *2 (N.D. Ohio Aug. 1, 2012). Concern for judicial economy, familiarity with relevant state law, and docket congestion do not tilt in favor of either party. However, the Court is persuaded that this dispute arose from alleged conduct that occurred principally in the Southern District of Ohio. Central to Plaintiffs' claim is a determination of whether the named Plaintiffs had a duty to warn Terry and Sarah about Patrick's history of sexually abusing young children. During all relevant time periods, Terry, Sarah, and Patrick resided in the Southern District of Ohio. Moreover, Patrick's abuse of A.B. and B.C. occurred in the Southern District of Ohio, and the criminal investigation into Patrick's actions was conducted in that District. Indeed, it is perhaps for that reason that Terry and Sarah's civil actions against Plaintiffs herein were filed in the Delaware County Court of Common Pleas, which is physically located within the boundaries of the Southern District of Ohio.

Thus, the Court finds that a substantial part of the operative facts occurred within the Southern District of Ohio. While some facts relating to Patrick's historic abuse of Plaintiffs forty years ago occurred in the Northern District of Ohio, the claim in the instant action relates to Plaintiffs' subsequent duty (if any) to warn individuals living in the Southern District of Ohio regarding the danger posed by Patrick in that District. This Court has previously indicated a preference for "resolving controversies in their locale." *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1011 (N.D. Ohio 1998). Here, the Court finds that justice is better served if the Southern District, the locale where this case "finds its center of gravity," adjudicates the instant matter. *North Am. Demolition Co. v. FMC Corp.*, 2005 WL 1126747 at *3 (N.D. Ohio April 28, 2005) (internal quotations omitted).

Accordingly, weighing all factors together, the Court finds that they weigh in favor of transferring this action to the Southern District of Ohio. *See, e.g., Hamilton County Ohio v. Hotels.com, L.P.*, 2011 WL 14369 at *3 (S.D. Ohio Jan. 3, 2011) (determining that while "the convenience factor does not tip the balance in favor of a transfer," transferring the matter from the plaintiffs' chosen forum was appropriate based solely on the "interest of justice"); *see also Bradburn*, 2012 WL 3138373 at *2 (transferring matter from Northern District of Ohio, where the plaintiff resided, to the Southern District of Ohio because the "interest in resolving controversies locally does favor transfer to the Southern District").

## IV.    Conclusion

Accordingly, for all of the foregoing reasons, Plaintiffs' Motion to Transfer Venue (Doc. No. 7) is GRANTED. The Court ORDERS this case transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**


Date: March 29, 2021

     *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE